IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNIVERSITY OF WISCONSIN
HOSPITAL AND CLINICS, INC.,

       Plaintiff,       OPINION & ORDER

 v.                 13-cv-568-jdp

KRAFT FOODS GLOBAL, INC.
GROUP BENEFITS PLAN,

       Defendant.

---

  This is an action for payment of benefits provided under an employee health care plan governed by the Employee Retirement Income Security Act (ERISA). ERISA allows a health care provider to bring a civil action to recover benefits due under the terms of an ERISA-governed plan in which one of its patients participates. 29 U.S.C. § 1132(a)(1)(B). The defendant in this case is a health plan that provides benefits to the employees of Kraft Foods Global, Inc., including Christine Severson. Aetna Life Insurance Company provides the insurance policy that pays benefits under the plan. Aetna was initially named as a defendant in this case, but the plaintiff successfully moved to dismiss the insurance company as Aetna only provided administrative services for the plan. Dkt. 5.

  This action is brought not by the participant, Severson, but by her health care provider, plaintiff University of Wisconsin Hospital and Clinics, Inc. (UW Hospital). Severson underwent a stent placement at UW Hospital, but the parties dispute whether the procedure was properly precertified. Through Aetna, the Kraft Foods Global, Inc. Group Benefits Plan (Kraft Plan) denied UW Hospital's claim for the procedure. Severson assigned her rights under the plan to UW Hospital, and now UW Hospital seeks payment or remand to the Kraft Plan for further consideration.

Before the court are the parties' cross-motions for summary judgment. Dkt. 12 and Dkt. 16. UW Hospital contends that regardless of whether it properly precertified the treatment, the plan requires the Kraft Plan to pay for Severson's procedure, although possibly after deducting a $300 penalty. The Kraft Plan disagrees for two reasons. First, the Kraft Plan contends that UW Hospital cannot bring an ERISA claim under 29 U.S.C. § 1132 because Severson herself will not be billed for the stent placement, and thus she has no rights to assign to UW Hospital. Second, the Kraft Plan contends that the denial of benefits was reasonable by the terms of the plan document which does not establish a framework for paying benefits when network providers such as UW Hospital fail to precertify treatment. The court concludes that UW Hospital may assert a claim under ERISA and that the Kraft Plan's denial of benefits was contrary to the terms of the plan. The court will therefore grant UW Hospital's motion for summary judgment and deny the Kraft Plan's motion.

UNDISPUTED FACTS

The court finds that the following facts are material and undisputed.

UW Hospital is a Wisconsin corporation that provides medical services and operates a hospital in Madison, Wisconsin. In July 2012, Severson underwent a stent placement procedure at UW Hospital. The total cost of the care was $26,178.57. At the time of the procedure, Severson was participating in her employee health and welfare plan—the Kraft Plan. Severson assigned her right to benefits to UW Hospital, which is now suing on her behalf for the Kraft Plan's refusal to pay for the stent placement.

The plan is governed by a "plan document" that describes eligibility requirements, terms of coverage, and claims procedures.[1] The plan document also explains that some medical services require "precertification" from Aetna to be covered, and lays out the procedure for obtaining such precertification. The parties highlight three provisions as relevant to this case. The first appears in the introductory sections to the plan document and provides a general notice that some services require precertification:

> Regardless of the plan under which you [the plan participant] are covered, you must call Aetna . . . to pre-certify certain services and to notify Aetna within 48 hours of being admitted to a hospital following emergency care. For medical services requiring pre-certification, including inpatient and certain outpatient mental health and substance abuse care, a $300 financial penalty will apply if you don't call and pre-certify your care before services are given. This $300 will not apply toward your annual out-of-pocket limit, and any care that was not pre-certified and not determined to be medically necessary will not be covered.

Dkt. 15-1, at 23.

The second and third relevant provisions go into more detail about how to obtain precertification and what services require it. Under the section entitled "Pre-Certification of Benefits: Network and Out-of-Area Plans," the plan document explains that:

> The Network Plans and Out-of-Area Plans require pre-certification before admission to a hospital or any service listed below. Member Services will certify that the admission or service is medically necessary and that the length of stay or treatment is appropriate for you or your dependent . . . . It is your responsibility to call Member Services for pre-certification . . . [b]efore hospitalization for a scheduled admission.

*Id.* at 32. Later in the same section, the plan warns that:

---

[1] The parties have submitted a "Summary Plan Document" in place of the full plan document. Dkt. 15-1. The summary notes that whenever its provisions conflict with the plan document, the latter's terms control. As neither UW Hospital nor the Kraft Plan contends that any such conflict exists in this case, the court will rely on the summary plan document as controlling.

3

> For out-of-network care, if you enter the hospital or receive care requiring pre-certification without approval from Member Services, you will have to pay a $300 financial penalty before benefits begin. This $300 financial penalty will not be counted toward your deductible or out-of-pocket limit. When you submit your claim, the care will be reviewed for medical necessity. Charges for any and all care determined by the claims administrator to be medically unnecessary will not be considered covered charges. No payments will be made for those charges.

*Id.* at 33 (original emphasis on penalty amount omitted). Together, these provisions set out the process for precertification. In general, when a participant receives out-of-network care, she bears the burden of seeking precertification. When the participant seeks in-network care, however, the health care provider will usually take care of precertification.

UW Hospital, a network provider[2] under the plan, performed Severson's stent placement on July 12, 2012. Beforehand, UW Hospital contacted Aetna to request precertification for an outpatient procedure. Aetna advised UW Hospital that no precertification was necessary for outpatient procedures and UW Hospital performed Severson's stent placement the next day. After the procedure, UW Hospital submitted a claim to Aetna for payment. Aetna denied the claim, however, stating in an "Explanation of Benefits" document that coverage was being denied for failure to follow precertification requirements.

UW Hospital appealed the decision, referring Aetna to the pre-treatment request for precertification. Aetna responded that it was "unable to locate documentation of an inpatient authorization being requested and/or approved for the dates in question," and upheld the denial of benefits. *Id.* at 107. Although not explicitly stated in the Explanation of Benefits or Aetna's letter denying UW Hospital's appeal, Aetna apparently believed that Severson's stent placement

---

[2] The parties use "in-network provider" and "network provider" interchangeably. For consistency, the court will use the term "network provider."

was an inpatient procedure, which required precertification. UW Hospital asked Aetna to reconsider, but the insurance company refused.

The parties dispute whether Severson's procedure was, in fact, inpatient care. The Kraft Plan directs the court to the medical records UW Hospital submitted to Aetna with its claim for benefits, *id.* at 81-86, as demonstrating that the services included inpatient confinement. The medical records, however, are coded computer printouts that the court cannot readily decipher without guidance from the parties. UW Hospital responds to the Kraft Plan's assertion by stating that nothing in the medical records clearly indicates that Severson's treatment was an inpatient procedure. UW Hospital's response seems evasive. Because these are its *own* records, UW Hospital could have explained the coding format to the court and conclusively established whether Severson's procedure was inpatient or outpatient. Although neither party mentions Severson's discharge summary, the document confirms that she spent two nights in the hospital, *id.* at 103, so the court doubts that UW Hospital can genuinely dispute that this was inpatient care. Ultimately, the disagreement is immaterial as the court concludes that even if Severson *did* receive inpatient treatment, the Kraft Plan's denial was arbitrary and capricious.

OPINION

The motions present two issues. The first is whether UW Hospital, as Severson's assignee, may assert a claim for benefits under ERISA. If so, the second issue is whether the Kraft Plan's denial of benefits was arbitrary and capricious under the terms of the plan. The plan document is in the record, and the conduct of the parties is not disputed. This case thus turns on the interpretation of the plan in view of the applicable law and is appropriate for summary judgment. Summary judgment is proper if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

5

law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Neither side has pointed to any factual dispute that would require a trial on the two issues before the court.

**A. UW Hospital can bring a claim under ERISA and sue as Severson's assignee.**

The Kraft Plan contends that Severson could not have pursued this action herself because she does not need to be made whole. The Kraft Plan notes that Severson has not been billed for her procedure, and never will be (at least not by the Kraft Plan). As Severson assigned her rights to her health care provider, UW Hospital has no more entitlement to relief than Severson would have if she pursued the action directly. *See Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 864 (7th Cir. 1997) ("[E]lementary contract law provides that upon a valid and unqualified assignment the assignee stands in the shoes of the assignor and assumes the same rights, title and interest possessed by the assignor.") (internal citations omitted); *Decatur Mem'l Hosp. v. Conn. Gen. Life Ins. Co.*, 990 F.2d 925, 927 (7th Cir. 1993) ("An assignee cannot have greater rights than the assignor possessed, and . . . the beneficiary cannot obtain more than the plan provides in writing."). The Kraft Plan contends that UW Hospital is ultimately trying to recover its *own* loss rather than Severson's, and that such claims fall outside those authorized by 29 U.S.C. § 1132.

Section 1132(a)(1)(B) allows a health plan's participant or her beneficiary to bring a civil action to recover benefits due and "supplies jurisdiction when a provider of medical services sues as assignee of a participant." *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991). "ERISA defines a 'beneficiary' as 'a person designated by a participant . . . who is or may become entitled to a benefit' under the plan." *Id.* (internal citations omitted). The parties agree

6

that Severson assigned her right to benefits to UW Hospital, Dkt. 22, ¶ 8, so the critical question is whether Severson was or could become entitled to benefits under her plan. "In order to establish that he or she 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989).

UW Hospital has a strong claim that Severson would be entitled to benefits if she filed a claim with the Kraft Plan herself. Severson received medical services from a network provider under her health plan. Even though her plan document emphasizes that network providers usually take responsibility for filing claims for treatment they provide, Severson bears the "ultimate responsibility for payment of [her] medical . . . bills." Dkt. 15-1, at 62. In the event that a network provider fails to file a claim, the plan requires Severson to submit a claim within one year of receiving treatment. *Id.* If the procedure was medically necessary, the Kraft Plan will cover the expenses, but it will apply a $300 penalty.

The Kraft Plan does not explain how Severson's entitlement to benefits is somehow lost when she assigns her rights to UW Hospital. Instead, the Kraft Plan attempts to reframe the argument by contending that UW Hospital may not bill Severson directly.[3] But this argument misses the issue. The plan document under which UW Hospital is suing governs the relationship between Severson and the Kraft Plan. There are no contracts or obligations in the record governing Severson's relationship with UW Hospital, and there is no reason to think that UW Hospital could not simply bill Severson directly for the services it provided to her. Moreover, the Kraft Plan does not deny that if Severson had filed a claim herself, she would be entitled to benefits. Although the plan document recommends that participants precertify before receiving

---

[3] In the Explanation of Benefits that Aetna sent to UW Hospital, there is a notation that says UW Hospital may not bill Severson directly for any charges she incurred. Dkt. 15-1, at 89.

7

treatment, it acknowledges that the Kraft Plan will pay benefits for post-treatment claims if the services were medically necessary—albeit with a $300 penalty. As the Kraft Plan correctly states, Severson's assignment gives UW Hospital "the same rights, title and interest possessed by the assignor." Dkt. 23, at 4 (citing *Decatur Mem'l Hosp.*, 990 F.2d at 927). Because Severson would have had a right to benefits had she filed this claim herself, the court concludes that UW Hospital can bring suit under ERISA as her assignee.

On a more fundamental level, preventing UW Hospital from asserting Severson's rights would defeat ERISA's purposeful protection of plan participants and beneficiaries, and other courts have declined to impose such requirements on health care providers who bring suit under ERISA. *See, e.g.*, *Brown v. Sikora & Assocs., Inc.*, 311 F. App'x 568, 571 (4th Cir. 2008) ("When assignees of ERISA benefits have been found to have derivative standing, they could have sued the actual ERISA participants . . . Thus permitting derivative standing in these cases would further the purposes of ERISA 'to protect the interests of participants in employee benefit plans and their beneficiaries.'") (internal citations omitted); *Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir. 1997) ("[A]n assignment will not facilitate a plan participant's or beneficiary's receipt of benefits if the plan does not pay the benefits it owes, and provider-assignees are not permitted to sue on the participant's or beneficiary's behalf."). In *Cagle*, the Eleventh Circuit noted that "[i]f provider-assignees cannot sue the ERISA plan for payment, they will bill the participant or beneficiary directly for the insured medical bills, and the participant or beneficiary will be required to bring suit against the benefit plan when claims go unpaid." *Id.* The court went on to conclude that "providers . . . are better situated and financed to pursue an action for benefits owed for their services [and] the interests of ERISA plan participants and beneficiaries are better served by allowing provider-assignees to sue ERISA plans." *Id.* (internal citations omitted). This court has taken up the issue as well, and decided that health care providers are

free to bring suit under ERISA in these circumstances. *See Univ. of Wis. Hosp. & Clinics, Inc. v. Aetna Life Ins. Co.*, No. 13-cv-197, 2014 WL 2565284, at *4-5 (W.D. Wis. June 6, 2014). Because the Kraft Plan offers no authority to contradict this trend or to support its assertion that Severson would not be entitled to benefits if she filed this claim herself, the court concludes that UW Hospital may pursue this case.

**B. UW Hospital is entitled to summary judgment.**

The second issue is whether the Kraft Plan's denial of benefits was reasonable under the plan's governing document. As an initial matter, the parties agree that the court must use a deferential "arbitrary and capricious" standard of review to evaluate the decision to deny benefits. Dkt. 13, at 6 and Dkt. 17, at 5. Although the default standard of review in ERISA cases is de novo, when a plan gives its "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan . . . then a denial of benefits will be reviewed under an arbitrary and capricious standard." *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 631 (7th Cir. 2004) (internal citations omitted). Here, the language of the plan document gives the administrator such discretion, so deferential review is appropriate. Dkt. 15-1, at 67-68 ("The plan administrator has complete discretionary authority to interpret and construe the terms of the plan and to decide factual and other questions relating to the plan and plan benefits . . ."). But deferential review is "not a rubber stamp [and the court] will not uphold a denial of benefits when there is an absence of reasoning in the record to support it." *Cerentano v. UMWA Health & Ret. Funds*, 735 F.3d 976, 981 (7th Cir. 2013) (internal citations omitted). UW Hospital will be entitled to summary judgment if it can demonstrate that the administrator "not only made the wrong call, but that he made a 'downright unreasonable' one." *Chojnacki v. Georgia-Pac. Corp.*, 108 F.3d 810, 816 (7th Cir. 1997) (internal citations omitted).

A quick summary of the parties' positions reveals why the denial of benefits was unreasonable in this case. The Kraft Plan denied coverage because UW Hospital, a network provider, failed to precertify Severson's stent placement. UW Hospital argues that when there is no precertification, the plan requires a "medical necessity" review. If the treatment was medically necessary, the costs are covered after applying a $300 penalty; if not medically necessary, the costs are not covered. The Kraft Plan responds that this framework only applies when a plan participant receives treatment from an out-of-network provider or when she files a claim herself, and if a network provider offers treatment without precertification, benefits are denied outright.

The Kraft Plan's position is untenable because the terms of the plan do not support such a narrow application of the precertification process. "[I]f fiduciaries or administrators of an ERISA plan controvert the plain meaning of a plan, their actions are arbitrary and capricious." *Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 540 (7th Cir. 1996). In this case, the plan document does not squarely address what happens when a network provider fails to obtain precertification before giving care. A number of other provisions in the plan document discuss precertification, however, and none of them limit the $300 penalty and medical necessity review to out-of-network care. For example, the section that introduces and describes the precertification process states that: "[f]or medical services requiring pre-certification, including inpatient and certain outpatient mental health and substance abuse care, a $300 financial penalty will apply if you don't call and pre-certify your care before services are given." Dkt. 15-1, at 23. The section specifically dedicated to precertification also offers no limiting language, noting only that "[i]f the admission or service requires pre-certification and it is not certified before you or your dependent enters the hospital, before seeking any of the services above, or within 48 hours following emergency admission, a $300 financial penalty will apply." *Id.* at 32

10

(original emphasis on penalty amount omitted). Neither of these provisions limits the precertification framework to out-of-network care. Quite the opposite; they apply to *all* situations that require precertification, including care from network providers.

In response, the Kraft Plan points to two sections of the plan document that impose the precertification requirement on out-of-network care. The first appears in a list of introductory notes, and explains that "[t]here is a $300 penalty for not pre-certifying as required for out-of-network care. Care found not to be medically necessary is not covered." *Id.* at 6. The second occurs in the section dedicated to precertification, informing participants that "[f]or out-of-network care, if you enter the hospital or receive care requiring pre-certification without approval from Member Services, you will have to pay a $300 financial penalty before benefits begin." *Id.* at 33 (original emphasis on penalty amount omitted). These statements are certainly both true in that they confirm that the $300 penalty applies in the out-of-network context. The Kraft Plan misreads them, however, as extending the framework to *only* out-of-network care. No such limiting language appears in either provision, and if the Kraft Plan intended to impose such a strict process on its network providers, with draconian penalties for failing to follow it, one would expect to find a statement to that effect somewhere in the plan document. *See Univ. of Wis. Hosp. & Clinics, Inc.*, 2014 WL 2565284, at *8. Taken as a whole, the plan's terms simply do not support the interpretation Aetna used in denying benefits and the approach the Kraft Plan now defends in this case. The Kraft Plan's refusal to implement the $300 penalty and medical necessity review process for care from network providers unreasonably contradicts the plain meaning of the plan document and is therefore arbitrary and capricious.

**C. Remand to the plan administrator is the appropriate remedy.**

UW Hospital's complaint asks the court to award benefits payable under the plan or remand the case back to the plan administrator for proper review of the claim. Dkt. 1. In this case, the latter is appropriate because the record is unclear on whether Severson's procedure was medically necessary. "When an ERISA plan administrator's benefits decision has been arbitrary, the most common remedy is a remand for a fresh administrative decision rather than an outright award of benefits." *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 778 (7th Cir. 2010); *see also Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009) ("When a plan administrator fails to provide adequate reasoning for its determination, [the] typical remedy is to remand to the plan administrator for further findings or explanations."). This case does not present the rare instance "where the record . . . contains such powerfully persuasive evidence that the only determination the plan administrator could reasonably make is that the claimant is" entitled to benefits. *Majeski*, 590 F.3d at 484. The court will therefore remand this case to the Kraft Plan for further proceedings.

Even though the court has held that the Kraft Plan must apply the $300 penalty framework to network providers who fail to precertify, that framework still requires the Kraft Plan (or Aetna) to review the services rendered for medical necessity. On remand, if the Kraft Plan determines that Severson's stent placement was medically necessary, it must then award benefits, subject to the $300 penalty. If the Kraft Plan determines that the procedure was not medically necessary, the plan document provides that it may deny benefits entirely. Of course, the Kraft Plan may also determine that Severson's procedure was outpatient care, in which case there would be no need for precertification. The court does not express an opinion on these issues, leaving the decision to the sound discretion of the plan administrator.

**D. UW Hospital is entitled to its reasonable attorney's fees.**

UW Hospital's complaint, Dkt. 1, requests its reasonable attorney's fees under 29 U.S.C. § 1132(g)(1). The Supreme Court has interpreted this statute to allow "a court in its discretion [to] award fees and costs to either party . . . as long as the fee claimant has achieved some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010) (internal citations omitted). Even though the court will remand this case to the plan administrator instead of awarding benefits outright, this outcome does not bar UW Hospital from receiving its attorney's fees. *See Huss v. IBM Med. & Dental Plan*, 418 F. App'x 498, 511 (7th Cir. 2011) (noting that in *Hardt*, the Supreme Court "effectively overruled [Seventh Circuit] precedents preventing an ERISA claimant from receiving attorney's fees if her case is remanded to the plan administrator"). By virtue of the court's decision to grant summary judgment in its favor, UW Hospital has satisfied the requirement of obtaining "some degree of success on the merits." *Id.*

The Seventh Circuit recognizes two tests for analyzing attorney's fees in ERISA cases, the first of which involves five-factors: (1) the degree of the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy personally an award of attorney's fees; (3) whether an award of attorney's fees against the offending party would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the plan as a whole; and (5) the relative merits of the parties' positions. *Filipowicz v. Am. Stores Benefit Plans Comm.*, 56 F.3d 807, 816 (7th Cir. 1995). The second test focuses on whether the "position of the losing party was 'substantially justified' or . . . special circumstances make an award unjust." *Tesch v. Gen. Motors Corp.*, 937 F.2d 359, 362 (7th Cir. 1991). The court will use the first test as it "more accurately articulates the various equitable factors appropriate to consider in determining whether attorney fees are appropriate, although the result would be the same under

13

the second test as well for much the same reasons." *Freeland v. Unum Life Ins. Co. of Am.*, No. 11-cv-053, 2013 WL 4482995, at *17 (W.D. Wis. Aug. 19, 2013). The factors weigh in favor of awarding UW Hospital its attorney's fees.

In this case, the first, third, fourth, and fifth factors are particularly relevant. Since UW Hospital's first request for payment, Aetna and the Kraft Plan have done little more to explain their position than simply repeating that UW Hospital failed to request precertification for inpatient treatment. Dkt. 15-1, at 107. Now, when forced to offer a more substantive answer, the Kraft Plan has advanced an interpretation of its plan document that effectively and unreasonably re-writes its precertification and benefit reduction procedures. This interpretation does not find support in the plan document and the Kraft Plan bears considerable fault for the case proceeding this far into litigation. Moreover, the Kraft Plan does not offer any reason for holding network providers to such an unforgiving standard while allowing out-of-network providers such great latitude. An award of attorney's fees might deter the Kraft Plan from similar manipulation of its policies in the future. In addition, awarding fees in this case will confer a benefit on plan participants by urging plan administrators and insurers to make the terms of their policies clear up front, rather than waiting until there is a dispute.

The court intends to enter one final judgment that remands this case to the plan administrator and awards UW Hospital its reasonable attorney's fees, and it requests submissions from the parties as set forth in the order below.

ORDER

IT IS ORDERED that:

1) Plaintiff's motion for summary judgment, Dkt. 12, is GRANTED;

2) Defendant's motion for summary judgment, Dkt. 16, is DENIED;

3) Plaintiff is directed to submit an itemization of its reasonable attorney's fees by July 7, 2014;

4) Defendant may file a response to Plaintiff's claim for attorney's fees by July 14, 2014.


Entered this 23rd day of June, 2014.

                                BY THE COURT:
                                /s/
                                JAMES D. PETERSON
                                District Judge